# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ex rel, DeVontae Brooks, ) | |
| Appearing QUI TAM, ) | |
| ) | |
| Plaintiff/Relator, ) | |
| ) | Case No. 17-cv-1237 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| WELLS FARGO BANK N.A, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/relator DeVontae Brooks brings this *qui tam* action under the False Claims Act ("FCA") against defendant Wells Fargo Bank N.A. Specifically, Brooks alleges that Wells Fargo submitted fraudulent claims, gave false statements, and committed unlawful retaliation in violation of 31 U.S.C. § 3729(a)(1)(A)-(B) and 31 U.S.C. § 3730(h). Currently before the Court is Wells Fargo's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion to dismiss is granted.

**Background**

The following facts are summarized from the amended complaint and are taken as true for the purpose of this motion. Wells Fargo is a national bank with its home office in Sioux Falls, South Dakota. Fannie Mae and Freddie Mac are government sponsored enterprises who buy mortgage loans and mortgage-related securities originated by, among others, Wells Fargo. The Federal Housing Administration ("FHA") is a government agency who provides approved lenders with protection against losses when homeowners default on their loans.

Brooks worked for Wells Fargo from 2010 until 2016. In June 2014, Brooks was Associate Vice President/Lending Manager for the National Decision Support Division. In this position, Brooks supervised several underwriters with the responsibility for evaluating high-risk loan requests.

In July 2016, Brooks denied a self-employed applicant for a loan ("Yalif Loan") because, according to Brooks, the application did not support the ability to repay. After the loan was denied, a loan officer escalated the application to Wells Fargo's National Escalation Team where it was again denied. Next, several executives within the Loan Department were called in an attempt to have the loan approved. Brooks states that he continued to warn his superiors that the Yalif Loan application failed to meet Fannie Mae's standards. Brooks asserts that after the loan was denied a third time, "the sales team" provided a dictated letter that was signed by the borrower which "allowed an alleged third party to review the file and make a final determination." Dkt. 15 at 8. The loan was approved in August 2016.

That same month, Brooks denied another loan application ("Fay Loan"). The borrower applied for a commercial loan after needing to make an imminent balloon payment he could not afford. While reviewing the application, Brooks noticed inconsistencies on the applicant's tax returns. According to Brooks, Elena Golubstov, a Wells Fargo lending officer, informed Brooks that the application would be approved if the applicant knew how much income was needed to qualify. After informing his superiors that this would be illegal and unethical, Brooks was "cut-off" from communication about the application. Brooks states that the loan request was approved in September 2016 after Wells Fargo told the applicant how much income was needed on his application.

Brooks alleges that Wells Fargo provided false information to Fannie Mae and Freddie Mac for repayment stating that the applications met all underwriting standards and were free from fraud and material misrepresentation. In Count I, Brooks alleges Wells Fargo submitted fraudulent claims

2

for payment to the United States government. In Count II, Brooks asserts that Wells Fargo used false statements in connection with selling mortgage loans to Fannie Mae and Freddie Mac. In Count III, Brooks alleges that his termination was unlawful retaliation after notifying his superiors about the false statements to Fannie Mae, Freddie Mac, and the FHA.

Wells Fargo argues that Brooks' amended complaint should be dismissed for failure to state a claim under Rule 12(b)(6) and Rule 9(b). Specifically, Wells Fargo asserts that the amended complaint fails to sufficiently plead a claim to the United States government, does not adequately allege materiality, and fails to sufficiently allege a nationwide scheme. Additionally, Wells Fargo argues that Brooks' FCA retaliation claim should be dismissed.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and raises the right to relief above a speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

Under 31 U.S.C. § 3729(a)(1)(A), a person violates the False Claims Act if he "'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval by the government.'" *United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014) (internal citation omitted). When alleging an FCA violation, the complaint must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *United States ex rel. Gross v.*

*AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. 9(b). In other words, Brooks must provide the "who, what, when, where, and how" of the circumstances surrounding the complaint. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation omitted); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009).

1. *Submission of a False Claim*

Wells Fargo argues that Brooks fails to plead the actual submission of a false claim with the particularity required by Rule 9(b). The essential condition of an FCA violation is the actual submission of a false or fraudulent claim. *Mason v. Medline Industries, Inc.*, 731 F. Supp. 2d 730, 736 (N.D. Ill. 2010) (Conlon, J.) In asserting an FCA violation, a relator cannot simply "'describe a private scheme in detail but then . . . allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the government.'" *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10-cv-368, 2014 WL 3583980 at *3 (N.D. Ill. July 18, 2014) (Bucklo, J.) (quoting *United States ex rel. Clausen v. Labortaroy Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Put differently, to satisfy Rule 9(b), the complaint must have "some indicia of reliability" that an actual false claim was submitted to the government for payment. *Dolan*, 2014 WL 3583980 at *5 (citing *Clausen*, 290 F.3d at 1311).

As a preliminary matter, Brooks makes no factual allegations regarding the FHA. Brooks does not assert that the applications were for FHA loans nor does he allege that Wells Fargo submitted any claims to the FHA. Accordingly, the Court will only discuss the claims related to Fannie Mae and Freddie Mac.

In the amended complaint, Brooks alleges that after he and several other underwriters denied the Yalif Application, an "alleged independent third party" reviewed the file and made the final determination. Dkt. 15 at 8. Further, Brooks states that "a three-year average of declining income was

4

used to mask the true debt to income ratios under agency requirements." *Id.* Thus, Brooks asserts, Wells Fargo "knowingly provided false statements to Fannie Mae and Freddie Mac on which these [government sponsored enterprises] relied in regard[] to the health of the loan." *Id.*

The Court finds that Brooks fails to sufficiently plead that Wells Fargo submitted an actual false claim. As it relates to the Yalif Application, Brooks states that he and other underwriters denied the loan before it was escalated and eventually approved. However, Brooks does not state whether the applicant even applied for a Fannie Mae or Freddie Mac loan through Wells Fargo. Furthermore, while Brooks alleges that Wells Fargo took steps to deceive Fannie Mae, he then claims that Wells Fargo provided false statements to both Fannie Mae and Freddie Mac "in regards to the health of the loan." Dkt. 15 at 8. As Wells Fargo asserts, "it is axiomatic that Wells Fargo could not sell a loan to both Fannie Mae and Freddie Mac." Dkt. 42 at 4. The Court agrees. The lack of specificity as to who Wells Fargo sent the alleged false claim to renders it inadequate under Rule 9(b). As such, Brooks fails to plead "with some indicia of reliability" that Wells Fargo submitted an actual false claim. *See Clausen*, 290 F.3d at 1311.

The Fay Application fares no better. Brooks alleges that Wells Fargo employees informed the borrower of how much income was needed for approval. Brooks then asserts that employees colluded to "transfer a potential risk of loss from Wells Fargo's portfolio to Fannie Mae or Freddie Mac" when they knowingly provided false information to meet [Fannie Mae or Freddie Mac] underwriting requirements." Dkt .15 at 10. Rule 9(b) calls for greater specificity as to who the alleged false claim was given to. Again, Brooks does not allege that a claim was submitted to Fannie Mae or Freddie Mac. This would be difficult considering that Brooks alleges he was "cut off" from all communication regarding the loan after he voiced his concerns. As such, this omission is fatal to Brooks' claim.

To be clear, Brooks is not required to provide "specific invoices" of claims made to the government at the pleading stage. *See Lusby*, 570 F.3d at 854. But Brooks does not allege whether

5

Fannie Mae (or Freddie Mac) "actually bought" the loan supposedly sold by Wells Fargo. For all one knows, Brooks could be alleging that certain underwriters defrauded Wells Fargo. Nevertheless, Brooks' amended complaint fails to allege specific facts that link Wells Fargo's fraudulent conduct to a claim submitted to the government. *See Clausen*, 290 F.3d at 1313. Accordingly, Brooks' claim of an FCA violation fails under Rule 12(b)(6).

*2. Submission of the Claim to the Government*

Wells Fargo also argues that Brooks fails to adequately allege, as set forth above, that a claim for payment was submitted to the United States government. As mentioned previously, the FCA attaches liability when a person makes a false claim to the government if the requested money (1) is to be spent on the government's behalf or to advance a government interest and (2) the United States government provides any portion of the money requested. *See* 31 U.S.C. § 3729(b)(2)(A)(ii); *see also United States ex rel. Frawley v. McMahon*, No. 11-cv-4620, 2015 WL 115763 at *9 (N.D. Ill. Jan. 5, 2015) (Dow, J.). "The FCA does not apply to fraud against *any* federal grantee; it requires that the *specific money or property* claimed must be intended to 'be spent or used on the Government's behalf or to advance a Government interest and the government provide at least a portion of the money requested.'" *Garg v. Covanta Holding Corp.*, 478 Fed. Appx. 736, 741 (3rd Cir. 2012) (emphasis in original) (quoting 31 U.S.C. § 3729(b)(2)(A)(ii)). Accordingly, when alleging an FCA violation, the pleadings must contain specific facts that assert the government's money was spent as a result of the fraudulent claim. *See United States ex rel. Heath v. Wisconsin Bell, Inc.*, 111 F. Supp. 3d 923, 927, (E.D. Wis. 2015) (citing *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 738 (D.C. Cir. 1998)).

In the amended complaint, Brooks states that "[a]s a result of Defendant's actions, Fannie Mae and Freddie Mac have been placed into receivership, and the United States of America[] has had to pay in excess of [180] billion dollars to the Entities." Dkt. 15 at 12. In his brief in response to the motion to dismiss, Brooks contends that he does not need to plead a specific connection between

6

federal funds and the alleged fraudulent claim because it is "public knowledge" that "payment of fraudulent claims is directly tied to governmental losses." Dkt. 36 at 16.

The Court disagrees. Under Rule 9(b), Brooks' allegations do not sufficiently link the fraudulent claim with actual government spending. The fact that the government has provided funding to Fannie Mae and Freddie Mac does not relieve Brooks of the obligation to tie the fraud to specific government payments. *See Heath*, 111 F.Supp. 3d at 927. "The FCA requires more than fraud against anyone who happens to receive money from the federal government. Were that the case, the scope of the FCA would be enormous." *Garg*, 478 Fed. Appx. at 741. The Seventh Circuit has made clear that Fannie Mae and Freddie Mac are private corporations. *Federal National Mortgage Association v. City of Chicago*, 874 F.3d 959, 960 (7th Cir. 2017). Brooks does not claim that Fannie Mae and Freddie Mac are only funded by the government. Nor could he. Although Freddie Mac and Fannie Mae rely on federal government money at times, they "still generate revenue pursuant to [their] operation within the secondary mortgage market." *United States ex rel. Todd v. Fidelity National Financial, Inc.*, No. 12-cv-666, 2014 WL 4636394 at * 11 (D. Colo. Sept. 16, 2014). Therefore, a payment by Freddie Mac and Fannie Mae does not automatically result in spending by the United States government.[1]

Consequently, Brooks' failure to connect the alleged fraud with specific money spent by the federal government renders his allegations inadequate under Rule 12(b)(6) and especially Rule 9(b). Even if Brooks adequately alleged the submission of a claim under the FCA, which, as explained above, he did not, Brooks' amended complaint separately and independently fails for inadequately pleading that the alleged false claim led to government spending.

---

[1] The Court notes that the United States, while taking no position in the overall merits of Wells Fargo's motion to dismiss, submitted a Statement of Interest asserting that *Todd*, 2014 WL 4636394 was wrongly decided, and the unique position of the Fannie Mac and Freddie Mae relinquishes the need for a plaintiff to link a claim made to the government sponsored enterprises with money spent by the United States Government. Dkt. 41 at 12 n.9. The Court disagrees as the United States does not address this element as it pertains to Rule 9(b)'s requirement for heightened specificity. Nevertheless, the determination of this argument is not dispositive because Brooks, as stated earlier, failed to adequately allege that a claim was submitted and, as discussed below, is barred by public disclosure.

*3. Public Disclosure Bar*

Wells Fargo argues that the public disclosure bar warrants dismissal of Brooks' claims. Courts must dismiss *qui tam* actions when the claims are:

> based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A); *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912-13 (7th Cir. 2009). Courts are to conduct a three-step analysis when determining whether the public disclosure bar applies. *See Glaser*, 570 F.3d at 913.

> First, it examines whether the relator's allegations have been "publicly disclosed." If so, it next asks whether the lawsuit is "based upon" those publicly disclosed allegations. If it is, the court determines whether the relator is an "original source" of the information upon which his lawsuit is based.

*Id.* (internal citation omitted).

3.1 Publicly Disclosed Allegations

Wells Fargo contends that Brooks' allegations have been publicly disclosed. Public disclosure occurs when "'the critical elements exposing the transaction as fraudulent are placed in the public domain.'" *Id.* (citing *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003)). When the allegations have been publicly disclosed, the claim is barred because authorities are already in the position to vindicate the public's interests and thus, the *qui tam* action would serve no purpose. *See id.* (citing *Feingold*, 324 F.3d at 495).

Here, this element is easily satisfied as Brooks' assertions have been the subject of national press as well prior litigation. For example, in *United States v. Wells Fargo Bank, N.A.*, the Government sought civil damages under the False Claims Act against Wells Fargo alleging "that the Bank engaged in misconduct in originating and underwriting government-insured home mortgage loans." 972 F. Supp. 2d 593, 598 (S.D.N.Y 2013). The claims included FCA violations for falsely inducing the

8

Housing Urban Development government agency to "insure loans that were ineligible for such insurance," *id.* at 623-24, as well as failing to report underwriting violations as required by the FHA, *id.* at 624.

Additionally, the United States Department of Justice published a press release stating that Wells Fargo Bank agreed to settle fraud claims and admitted to falsely certifying that certain mortgages were eligible for FHA insurance. *Wells Fargo Bank Agrees to Pay 1.2 Billion for Improper Mortgage Lending Practices*, Justice News (April 8, 2016), https://www.justice.gov/opa/pr/wells-fargo-bank-agrees-pay-12-billion-improper-mortgage-lending-practices (last visited March 11, 2019). Brooks' allegations of FCA violations based on fraudulent mortgage practices have been publicly disclosed.

Similarly, Brooks' allegations are based upon publicly disclosed information. A claim is "based upon" disclosed allegations "when the relator's allegations and the publicly disclosed allegations are substantially similar." *See Glaser*, 770 F.3d at 915; *see also United States ex rel. Heath v. Wisconsin Bell, Inc.*, 760 F.3d 688, 691 (7th Cir. 2014). Here, the similarity between Brooks' claims of FCA violations based on mortgage related fraud and the claims contained in prior litigation demonstrate that Brooks' allegations are based upon publicly disclosed information. *See Wells Fargo Bank, N.A.*, 972 F. Supp. 2d at 598.

3.2 Original Source

Brooks can avoid the public disclosure bar if he can demonstrate that he is an "original source" of the information upon which the allegations in his complaint were based. *See Bellevue v. Universal Health Services of Hartgrove, Incorporated*, 867 F.3d 712, 720 (7th Cir. 2017). To do so, Brooks needs to establish that he has knowledge of wrongdoing that is (1) independent of the publicly disclosed allegations, (2) materially adds to those allegations, and (3) voluntarily provided this information to the Government before filing his case. 31 U.S.C. § 3730(e)(4)(B); *see id.*

9

The parties do not dispute that Brooks voluntarily provided information concerning his allegations to the Government before filing his complaint, nor is there dispute that Brooks' claims stem from personal observation and thus independent of any publicly disclosed allegations. However, the parties dispute whether Brooks allegations "materially adds" to those allegations already publicly disclosed.

Brooks argues that his claims materially add to the publicly disclosed allegations because "there is no information in the public domain that Wells Fargo has continued to violate all GSE guidelines, certifications, and sales contracts, nor the FGA's guidelines, certifications, and sales contracts." Dkt. 36 at 21. This argument fails. Brooks' claims cannot proceed independently by merely "adding details" of conduct that was previously known. *See United States ex rel. Bogina v. Medline Industries, Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). Furthermore, allegations that are "substantially similar" to those already in the public do not "materially add" to the public disclosure. *See Bellevue*, 867 F.3d at 720; *see also Cause of Action v. Chicago Transit Authority*, 815 F.3d 267, 282 (7th Cir. 2016). Brooks does not argue how his claims substantively differ from the publicly disclosed allegations. Indeed, Brooks' failure to sufficiently allege that a claim was actually submitted further undermines his argument that his allegations materially add to the public disclosures. As such, the Court finds that Brooks is not an original source of the publicly disclosed allegations because his complaint does not materially add to the allegations already in the public domain. *See United States ex rel. Conroy v. Select Medical Corporation*, 211 F. Supp. 3d 1132, 1146 (S.D. Ind. 2016) (finding that relators were not "original sources" because (1) their allegations were similar to the those made in prior lawsuits and (2) the past allegations were documented in a newspaper).

Because Brooks amended complaint fails for these reasons, the Court need not address Wells Fargo's arguments that Brooks failed to allege materiality and nationwide scheme. Wells Fargo's motion to dismiss is granted.

*4. FCA Retaliation Claim*

Wells Fargo argues that Brooks' retaliation claim should be dismissed. To survive a motion to dismiss, an FCA retaliation claim must contain facts that, if proven, establish that "(1) the plaintiff was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, (2) the employer knew the plaintiff was engaged in protected conduct, and (3) the employer was motivated to take an adverse employment action against the plaintiff because of the protected conduct. *See Singer v. Progressive Care, SC*, 202 F.Supp.3d 815, 828 (N.D. Ill. 2016) (Wood, J.) (citing *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004)).

Nevertheless, district courts within the Seventh Circuit have dismissed FCA retaliation claims when the plaintiff's FCA claim is dismissed under Rule 12(b)(6). *Id*; *United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11-cv-1392, 2014 WL 378644 at * 8 (C.D. Ill. Jan. 31, 2014) ("Without finding that the Plaintiff has sufficiently pled the claims for reimbursement were fraudulent or ever presented to the government, the Court cannot conclude that the allegations support a finding that Plaintiff was acting in furtherance of the FCA enforcement action or other efforts to stop violations of the FCA.") As the Court finds the FCA claim fails under Rule 12(b)(6), Brooks' FCA retaliation claim is dismissed. Wells Fargo's motion to dismiss Brooks' retaliation claim is granted.

**Conclusion**

For the foregoing reasons, Wells Fargo's motion to dismiss [24] is granted, with prejudice.

**IT IS SO ORDERED.**

Date: 3/12/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge